UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| SHIELA GAIL COE,<br><br>Plaintiff,<br><br>v.<br><br>SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | Case No. 2:20-cv-00029<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

# REPORT AND RECOMMENDATION

Plaintiff Shiela Gail Coe filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 7.) Before the Court is Coe's motion for judgment on the administrative record (Doc. No. 21), to which the Commissioner has responded in opposition (Doc. No. 22), and Coe has replied (Doc. No. 23). Having considered the parties' arguments and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Coe's motion for judgment on the administrative record be denied and the Commissioner's decision be affirmed.

## I. Background

### A. Coe's DIB Application

Coe applied for DIB on March 23, 2018, alleging that she has been disabled and unable to work since November 2, 2016, as a result of high blood pressure, diabetes, ankle and knee

problems, fluid retention, high cholesterol, vitamin and mineral deficiencies, arthritis, and depression. (AR 45.[1]) The Commissioner denied Coe's application initially and on reconsideration. (AR 56, 57.) At Coe's request, an administrative law judge (ALJ) held a hearing on November 19, 2019. (AR 25–43, 88.) Coe appeared with counsel and testified. (AR 27–40.) The ALJ also heard testimony from a vocational expert. (AR 40–42.)

**B. The ALJ's Findings**

On December 11, 2019, the ALJ issued a written decision finding that Coe was not disabled within the meaning of the Social Security Act and applicable regulations and denying her claim for benefits. (AR 9–19.) The ALJ made the following enumerated findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since November 2, 2016, the alleged onset date. (20 CFR 404.1571 *et seq.*)
>
> 3. The claimant has the following severe impairments: plaque psoriasis with polyarticular psoriatic arthritis; obesity; type 2 diabetes; essential hypertension; and hyperlipidemia (20 CFR 404.1520(c)).
>
> * * *
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> * * *
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for up to 6 hours each in an 8-hour workday; frequently climb ramps and stairs; and occasionally climb ladders, ropes, and scaffolds. Additionally, she should avoid exposure to extreme cold.

---

[1] The transcript of the administrative record (Doc. No. 19) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

*        *        *

> 6. The claimant is capable of performing past relevant work as a DATA ENTRY CLERK (DOT# 203.582-054). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

*        *        *

> 7. The claimant has not been under a disability, as defined in the Social Security Act, from November 2, 2016, through the date of this decision (20 CFR 404.1520(f)).

(AR 14–19.) The Social Security Appeals Council denied Coe's request for review on March 20, 2020, making the ALJ's decision the final decision of the Commissioner. (AR 1–6.)

**C. Appeal under 42 U.S.C. § 405(g)**

Coe filed this action for review of the ALJ's decision on May 21, 2020 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g). Coe argues that the ALJ did not account for her mental and manipulative impairments in determining her residual functional capacity and failed to properly consider Coe's subjective statements about her condition. (Doc. No. 21–1.) The Commissioner responds that the ALJ followed applicable regulations and the ALJ's decision is supported by substantial evidence. (Doc. No. 22.) Coe replies that the ALJ's decision is not supported by substantial evidence because he did not include limitations based on Coe's mental and manipulative impairments. (Doc. No. 23.)

**D. Review of the Record**

The ALJ and the parties have thoroughly described the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.


Case 2:20-cv-00029 Document 24 Filed 02/08/22 Page 3 of 16 PageID #: 507

## II. Legal Standard

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B. Determining Disability at the Administrative Level

Coe applied for DIB under Title II of the Social Security Act, which is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). To receive DIB, Coe must establish that she had a disability on or before the last date she was eligible for insurance under Title II, which is determined based on her earnings record. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1);

20 C.F.R. § 404.130. "Disability" in this context is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §404.1520(a)(4). At step one, the ALJ considers the claimant's work activity. *Id.* § 404.1520(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 404.1520(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'" *Combs*, 459 F.3d at 643 (alterations in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. § 404.1520(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant's residual functional capacity (RFC) permits her to perform past relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. § 404.1520(a)(4)(v).

## III. Analysis

On appeal, Coe argues that substantial evidence does not support the ALJ's assessment of her RFC because the ALJ did not specifically discuss her mental limitations in his RFC determination, did not include any manipulative limitations caused by her psoriatic arthritis, and improperly evaluated her subjective complaints. (Doc. No. 21-1.) The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence and that he properly considered Coe's subjective complaints and found that they were not entirely consistent with the record. (Doc. No. 22.)

### A. The ALJ's Consideration of Coe's Manipulative Impairments and Subjective Complaints

Coe argues that the ALJ erred by failing to include any manipulative limitations based on her psoriatic arthritis and improperly discounted Coe's subjective complaints about her condition. (Doc. No. 21-1.) At her DIB hearing, Coe testified that, because of her psoriatic arthritis, she had trouble holding things, dropped things, and had recently burned herself when she dropped a heavy pan while draining pasta. (AR 35–36.) She rated her pain at a six or a seven out of ten and stated that her medications helped control her psoriatic plaques but "[n]ot so much the pain." (AR 37–38.)

The ALJ began his analysis of Coe's RFC by articulating the relevant standard for assessing a claimant's symptoms:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR [§] 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR [§] 404.1520c.
>
> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(AR 17.)

The ALJ then analyzed Coe's symptoms as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause *some* of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> At the hearing, the claimant testified that her hypertension and diabetes are under control with prescribed medications, but she emphasized symptoms related to psoriatic arthritis, and suggested that this is the primary impairment limiting her ability to work. While this may be the case, the undersigned finds that the claimant's ability to work is not limited to the extent alleged by the claimant, but rather to the extent articulated by the DDS medical consultant, Nisha Singh, M.D., in her June 6, 2019, determination (Ex. 6F). Dr. Singh's determination is persuasive because it is consistent with the record as a whole, including the medical evidence of record and the claimant's own reports of her daily activities, as described throughout this decision.
>
> The medical evidence of record reveals that the claimant has a longstanding history of plaque psoriasis and polyarticular psoriatic arthritis (Ex. 9F/2, 6; 10F/11; et al.). The psoriasis typically affects approximately 10–15 percent of the surface area of her body, including her elbows, hands, torso, and knees, while the psoriatic arthritis causes arthralgias in multiple joints, including her finger joints, lower back, and knee joints (9F/2, 6; 10F/12; et al.).
>
> Office visit notes from the claimant's treating rheumatologist, Sivalingam Kanagasegar, M.D., dated June 24, 2019, indicate that the claimant has had these conditions for about 18 years (Ex. 9F/2). However, the record shows that the claimant worked steadily at the substantial gainful activity level from 1999 until November 2016 (Ex. 9D, 10D, and 2E), which shows that she has worked with this condition in the past, and suggests that she could *still* work with this condition, at least in the same capacity, as there is no evidence of worsening of the conditions.
>
> In terms of treatment, Dr. Kanagasegar's notes also indicate that the claimant has reported that Cosentyx has helped her symptoms in the past, but that she has not taken it in years (Ex. 9F/3). Despite this, the most recent treating record from Dr. Kanagasegar, dated July 25, 2019, shows an overall unremarkable physical examination following re-initiation of treatment (Ex. 10F/13). Although the claimant had some psoriasis at the elbows, hands, torso, and knees affecting approximately 10 percent of the body surface area, some swelling of the DIP joints of the right hand little finger, and some tenderness at the knees and cervical spine; the exam was otherwise normal, including full range of motion at all joints, negative straight-leg raising test, and no swelling otherwise (Ex. 10F/12–13).

In accordance with SSR 19-2p, the undersigned has also considered the effects of obesity on limitation of functioning as office visit notes indicate that the claimant's Body Mass Index (BMI) ranges between 40.0 and 44.9 (Ex. 2F/18, 23; 3F/7; 5F/10). However, the evidence does not support that the claimant's obesity *seriously* affects her ability to perform routine movement and necessary physical activity in work environments accommodating her residual functional capacity. It is also noted that the claimant has been counseled by her primary care provider on multiple occasions that weight loss will in fact help with her co-morbidities (Ex. 2F/18, 24; 3F/8; et al.).

It is also noted that office visit notes from Priority Care, LLC, state that the claimant's hypertension, hyperlipidemia, obesity, and diabetes are all "stable" (Ex. 3F/5). Her diabetes is characterized throughout the records as "without complications" (Ex. 2F/9, 13, 18, 23; 3F/7; 5F/9; et al.). There is no evidence of end-organ damage. Office visit notes also state that the claimant "***appears to be in generally good health***" upon physical examination (Ex. 2F/22; 3F/6; *emphasis added*).

The opinions of the first two DDS medical consultants are not persuasive because the claimant's arthralgias in combination with her obesity would not allow her to perform medium exertional work, as the consultants determined (Ex. 1A/9–10; 4A/10–12).

As noted above, the claimant has described daily activities which are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. In fact, she has admitted certain abilities which provide support for the residual functional capacity conclusion in this decision. More specifically, in August 2018 she told the psychological consultative examiner, Mr. Hardison, that she goes to the grocery store and the dollar store regularly, enjoys making stained glass as a hobby, reads and watches a lot of television, plays with her dog, talks with her grandchildren and son frequently, visits regularly with her stepmother who lives next door, cleans the floors, dusts, changes the bedding, cleans the bathroom, washes dishes, and uses the internet frequently, including eBay (Ex. 4F/4). In her Function Report completed in connection with this application and appeal, she reported that she cares for a small dog, is independent in her own personal care, drives, shops in stores for groceries and clothing, pays bills and manages money, dusts, irons, mops the floors, does dishes, changes the bedding, uses the computer, reads, watches television, visits her mother and stepmother monthly, and goes out to eat occasionally (Ex. 3E). All of the above activities support that she could perform the range of light exertional work articulated in this decision.

Generally, although the claimant has received appropriate treatment, that treatment has been essentially routine and conservative in nature, and has generally been effective. She has not been hospitalized, and no surgeries have been recommended or performed since the alleged onset date. She takes appropriate medications for her impairments, and she has alleged no untoward side effects (Ex. 1E/5; 6E/5; 8E/5).

> In sum, the undersigned finds that the residual functional capacity assessment in this decision is consistent with the record as a whole. The level of severity of functional limitations subjectively alleged by the claimant is not entirely consistent with the objective medical data. All objectively-supported limitations are sufficiently accounted for herein.

(AR 17–19.)

To determine whether an individual is disabled, an ALJ must "consider all of the individual's symptoms"—namely, the individual's own description of her impairments—"and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3P, 2016 WL 1119029, at *2 (Mar. 16, 2016); *see also* 20 C.F.R. § 404.1529(a). Factors relevant to the evaluation of symptoms and subjective complaints include (1) daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual is currently receiving or has received for relief of pain or other symptoms; (6) any measures the individual is using or has used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)–(vii); *see also* SSR 16-3p, at *7. If an ALJ's findings with respect to an individual's symptoms are supported by substantial evidence, "this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The Supreme Court has emphasized that "the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

Here, the ALJ considered Coe's testimony about her psoriatic arthritis symptoms. (AR 17.) The ALJ found that, although Coe's impairment could reasonably be expected to cause some of the alleged symptoms, Coe's "statements concerning the intensity, persistence, and limiting effects

of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*) The ALJ offered several reasons to support that conclusion, including Coe's history of substantial gainful activity while experiencing psoriatic arthritis and her unremarkable physical examinations by Dr. Kanagasegar, which indicated that she had full range of motion at all joints and only some swelling of the DIP joints of the little finger on her right hand. (AR 17–18 (citing AR 198–207, 218–19, 374, 375, 396–97).) The ALJ also considered Coe's history of treatment, medications, side effects, and her reported daily activities, which included making stained glass, washing dishes, dusting, ironing, and mopping. (AR 18–19 (citing AR 213, 225–32, 241, 252, 339).) Because the ALJ's RFC determination and his conclusion about Coe's subjective complaints were both supported by substantial evidence, *see Blakley*, 581 F.3d at 406, reversal is not warranted on this ground.

### B. The ALJ's Consideration of Coe's Mental Impairments

Because mental function is an essential aspect of a claimant's ability to work, an ALJ must consider mental impairment in crafting the RFC. *See* 20 C.F.R. § 404.1545(c) ("A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work.").

Coe is correct that the ALJ did not specifically discuss her mental impairment in his RFC determination at step four. At step two, the ALJ assessed the severity of Coe's mental impairment as follows:

> The claimant's mental impairment causes the following degrees of limitation in the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1:
> 
> - In the domain of ***understanding, remembering and applying information***, the claimant has **<u>no limitation</u>** as there is no evidence of any reduction in

her ability to learn, recall, and use information to perform work activities. In her Function Report completed in connection with this application and appeal, she indicated that she cares for a small dog, is independent in her own personal care, drives, shops in stores for groceries and clothing, pays bills and manages money, uses a computer, and does household chores including dusting, ironing, mopping the floors, dishes, and making the beds (Ex. 3E), which would be inconsistent with a finding that she has any significant limitation in this domain.

- In the area of ***interacting with others***, the claimant has **<u>no limitation</u>** as there is no evidence of any reduction in her ability to relate to and work with supervisors, coworkers, and the public. She indicated in her Function Report that she gets along "very well" with authority figures, and that she has never been fired or laid off from a job because of problems getting along with other people (Ex. 3E/7), which would be inconsistent with a finding that she has any significant limitation in this domain. She has also reported that she has no problems getting along with family, friends, neighbors, or others (Id., at 5).

- With regard to ***concentrating, persisting and maintaining pace***, the claimant has **<u>mild limitation</u>** to the extent the evidence shows only a *slight* reduction in her ability to focus attention on work activities and stay on-task at a sustained rate. Her reported ability to drive alone suggests that she is able to concentrate such that a finding of more serious limitation in this domain would be inconsistent.

- As for the domain of ***adapting and managing oneself***, the claimant has **<u>no limitation</u>** as there is no evidence of any reduction in her ability to regulate her emotions, control her behavior, maintain her well-being, learn from experience, and readily adjust to changed circumstances in a work setting. She indicated in her Function Report that she handles changes in routine "ok" (Ex. 3E/7), which would be inconsistent with a finding that she has any significant limitation in this domain.

Accordingly, as the claimant's mental impairment does not cause more than *mild* limitations in the above domains, they are deemed "non-severe" under the Regulations. In reaching this conclusion, the undersigned has considered the opinion of the psychological consultative examiner, Stephen Hardison, M.A., who examined the claimant on August 2, 2018 (Ex. 4F/5). Specifically, Mr. Hardison concluded that [s]he had the ability to remember and carry out very simple one- and two-step instructions without issues; that her ability to remember and carry out somewhat more detailed instructions did not appear significantly limited; that her ability to sustain concentration and attention for appropriate periods of time would not be more than mildly limited; that her ability to interact appropriately with coworkers, supervisors, and the general public did not appear limited; that her ability to adjust to changes in a structured routine setting did not appear limited; that her ability to take appropriate precautions regarding normal hazards did not

> appear significantly limited; and that her ability to make very simple or somewhat more detailed job-related decisions independently did not appear significantly limited (Id.).
>
> Mr. Hardison's assessment is deemed persuasive because it is consistent with his clinical findings and the results of the mental status exam he administered. For instance, on the mental status examination, the claimant's thought content was clear, her thought processing did not appear significantly impaired, she was oriented, she was able to recall two of three words after several minutes, she completed serial 3's to 30 successfully, she successfully solved multiplication problems and [a] wor[d] problem without paper and pencil, and she responded appropriately to social judgment and commonsense reasoning questions (Id., at 4–5).
>
> Mr. Hardison's assessment is also consistent with the claimant's report that she no longer has significant depressive symptoms, her report that she has remained on Cymbalta only for control of alleged chronic pain, her reported lack of formal mental health treatment, and her own reports of her daily activities (Id., at 3–4). For instance, she testified that she goes to the grocery store and the dollar store, enjoys making stained glass as a hobby, reads and watches a lot of television, plays with her dog, talks with her grandchildren and son frequently, visits with her stepmother who lives next door, cleans the floors, dusts, changes the bedding, cleans the bathroom, washes dishes, and uses the internet frequently, including eBay (Id., at 4).
>
> The opinions of the DDS psychological consultants are also deemed persuasive as they align with Mr. Hardison's assessment, *i.e.*, that the claimant essentially has no mental limitations other than *mild* limitation in concentration (Ex. 1A/6; 4A/7; 7F/9). They are also consistent with the claimant's own indication that her conditions do not affect her memory, task completion, concentration, understanding, ability to follow instructions, or ability to get along with others (Ex. 3E/5).

(AR 14–16.)

Coe does not allege that the ALJ erred in finding that her mental limitations were non-severe. Instead, she argues that "the ALJ failed to consider the combined effects of [Coe's] physical and mental impairments" in determining her RFC and that "[t]he ALJ's failure to include any mental limitations in the RFC determination, or to explain why such limitations were excluded, was error." (Doc. No. 21-1, PageID# 477–78.) She also argues that the ALJ's RFC determination

"ignored his findings regarding [the] persuasiveness" of Hardison's medical opinion. (*Id.* at PageID# 478.)

The governing regulations state that the ALJ will consider the limiting effects of all of a claimant's impairments, even those that are not severe, in determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(2), (e); *see also* SSR 96-8p, 61 Fed. Reg. 34,474-01, 34,477 (1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). In *Emard v. Commissioner of Social Security*, the Sixth Circuit held that an ALJ had adequately considered the limiting effects of all of a claimant's severe and non-severe impairments when, "[a]lthough the ALJ did not specifically discuss the combined effect of [the claimant's] impairments or mention [his] nonsevere impairments in assessing his residual functional capacity, she stated that she had carefully considered the entire record and 'all symptoms' at this step in the process" and "specifically noted in her summary of applicable law that she was required to comply with SSR 96-8p's mandate to 'consider all of the claimant's impairments, including impairments that are not severe.'" 953 F.3d 844, 851 (6th Cir. 2020). "The ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by [the claimant's] nonsevere impairments at step two of her analysis," supported the "conclusion that the ALJ complied with 20 C.F.R. § 416.945(e)[2] and SSR 96-8p." *Id.*at 852.

As in *Emard*, the ALJ discussed the functional limitations imposed by Coe's non-severe mental impairment at step two of his analysis, finding that Coe had no limitations in the domains of understanding, remembering, and applying information; interacting with others; and adapting

[2] There is no substantive difference between 20 C.F.R. § 404.1545(e) and § 416.945(e) for purposes of the Court's analysis.

Case 2:20-cv-00029 Document 24 Filed 02/08/22 Page 14 of 16 PageID #: 518

and managing herself, and mild limitations in concentrating, persisting, and maintaining pace. (AR 14–16.) The ALJ's assessment of Coe's mental limitations is supported by substantial evidence, including Hardison's examination records,[3] which state that Coe "reported that now she does not have any significant [depression] symptoms but has been maintained on the antidepressant medication primarily for its benefits to manage her chronic pain" and finding that Coe was, at most, mildly limited by her depression. (AR 340.) The ALJ's assessment is also supported by Coe's own indication that she is able to finish what she starts; that she can follow written and spoken instructions very well; and that she is not limited in her memory, task completion, concentration, understanding, following instructions, or getting along with others. (AR 229–32.)

Also as in *Emard*, the ALJ stated in his summary of the applicable law that he was required to "consider all of the claimant's impairments, including impairments that are not severe." (AR 13 (citing 20 C.F.R. § 404.1520(e), 404.1545; SSR 96-8p).) In his RFC analysis, the ALJ stated that

---

[3] Coe argues that, because the ALJ gave persuasive weight to the opinion of psychological consultative examiner Hardison at step two, he was required to discuss Hardison's assessment of Coe's limitations in the RFC determination at step four. (Doc. No. 21-1.) Coe cites no authority to support the conclusion that an ALJ who gives persuasive weight to a medical opinion at step two is required to explicitly consider that medical opinion at step four, and the Court is aware of no such authority. An ALJ's severity assessments at steps two and three are not an RFC assessment, and an ALJ is not required to "mimic" or adopt his step two or three severity findings in his RFC assessment. *Shinlever v. Berryhill*, No. 3:15-CV-371, 2017 WL 2937607, at *4 (E.D. Tenn. July 10, 2017).

As discussed above, the ALJ analyzed Coe's mental limitations in detail at step two and explained why Hardison's opinions supported those limitations and was consistent with other evidence in the record. (AR 15–16.) This discussion, when considered together with the ALJ's statements indicating that he had considered Coe's severe and non-severe limitations in determining her RFC, is sufficient to show that the ALJ adequately considered Coe's mental limitations under *Emard*. *See Garcia v. Comm'r of Soc. Sec.*, No. 1:19 CV 897, 2020 WL 3620041, at *10 (N.D. Ohio Apr. 21, 2020) (finding ALJ's consideration of claimant's mental impairments to be sufficient under *Emard* where ALJ considered claimant's counseling records at step two but did not discuss them at step four), *report & recommendation adopted*, 2020 WL 3617909 (N.D. Ohio July 2, 2020).

he considered "the entire record," "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and "the medical opinion(s) and prior administrative medical finding(s) . . . ." (AR 16–17.) These express statements that the ALJ had considered the entire record and all of Coe's symptoms, together with the ALJ's discussion of Coe's mental limitations at step two, are sufficient to show that the ALJ "consider[ed] all of [Coe's] impairments, including impairments that are not severe." *Emard*, 953 F.3d at 851 (quoting SSR 96-8p).

Coe is therefore not entitled to reversal on this ground.

## IV. Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Coe's motion for judgment on the administrative record (Doc. No. 21) be DENIED, and that the decision of the Commissioner be AFFIRMED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 8th day of February, 2022.

ALISTAIR E. NEWBERN
United States Magistrate Judge